756 So.2d 1052 (2000)
Michael BLEVINS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-0848.
District Court of Appeal of Florida, Fourth District.
April 12, 2000.
*1053 Richard L. Jorandby, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Gentry Denise Benjamin, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
We affirm Blevins' conviction and sentence on charges of burglary of a dwelling with a battery, aggravated battery, robbery, and third-degree grand theft.
At trial, the victim, Georgette Leenher, a seventy-six year old woman, testified that at 10:30 a.m., on the morning of the crime, she heard a noise coming from her kitchen. She came face to face with Blevins and asked him who he was. Blevins replied that he was the maintenance man. He then grabbed a ceramic lamp and beat her about the head. Evidence showed that she may also have been hit with an iron.
Blevins asked the victim where her jewelry was and pulled her into the bedroom. He told the victim that he wanted her rings and told her to "get them off or I will cut them off." She complied. Blevins also yanked off her diamond necklace and diamond bracelet. Following this, Blevins took jewelry from her jewelry box, her husband's watches, and her handbag, which was in the closet.
Once Blevins had taken what he wanted from the bedroom, he went back into the kitchen and picked up the screen that he had apparently removed to gain entry, wiped it with a rag, and placed it back in the window.
The trial court allowed the state to introduce the collateral crime testimony of Robert Murray who stated that on the same morning, between nine and ten o'clock, he also encountered Blevins in his kitchen, and it appeared that Blevins had broken in by cutting his screen. When Murray asked Blevins what he was doing there, Blevins replied that he was there to paint. The distance between Murray's house and Mrs. Leenher's house is 1.1 miles.
We need not resolve the state's contention that the collateral crime issue was not preserved, as, in any event, there was no error in admitting testimony as to the collateral burglary to prove Blevins' identity. See § 924.051(1)(b),(3), Fla. Stat.
Similar fact evidence is admissible to prove identity where there is something unique or unusual about it which tends to establish that the defendant committed the crimes charged. See Buenoano v. State, 527 So.2d 194, 197 (Fla.1988). Although a general similarity is insufficient, it is not necessary that the collateral crime be identical to the one in issue, provided there are sufficient identifiable points of similarity between the two. See Gore v. State, 599 So.2d 978 (Fla.1992); Drake v. State, 400 So.2d 1217 (Fla.1981). Further, in this context, dissimilarities which are more a result of difference in opportunity rather than difference in modus operandi, should not defeat admissibility. See id. As the supreme court stated in Chandler v. State, 702 So.2d 186 (Fla. 1997):
We recognize that the crimes are not exactly the same. However, that fact alone does not preclude admission of collateral crime evidence and, indeed, *1054 would erect an almost impossible standard of admissibility.
Id. at 195 (citing Gore); see also Evans v. State, 723 So.2d 855 (Fla. 4th DCA 1998).
In this case, the similarity between the incident involving Robert Murray and this crime consisted of Blevins' forced entry through a screen in the kitchen area in the mid-morning of the same day in the same neighborhood and his statement to the respective victims that he was there to do maintenance work. Blevins was even wearing the same shirt. While Blevins did not rob Murray, we believe this difference represents nothing more than a difference in opportunity, in terms of the potential victim that he faced, Leenher being an elderly woman. These facts were sufficiently similar to permit the introduction of Murray's testimony. See State v. Smith, 586 So.2d 1237 (Fla. 2d DCA 1991).
We also reject Blevins' double jeopardy challenges to his grand theft and aggravated battery convictions.
Section 775.021, Florida Statutes, provides, in pertinent part:
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purpose of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent.
§ 775.021(4), Fla. Stat. By charging robbery and grand theft, the state relies on the language in subsection (4), which allows it to charge as many offenses as are committed in the same transaction. The exceptions are:
1. Offenses which require identical elements of proof;
2. Offenses which are degrees of the same offense as provided by statute;
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
§ 775.021(4)(b)1-3., Fla. Stat.
It is well-settled that a defendant may not be convicted of robbery of property and grand theft of the same property because "both offenses are simply aggravated forms of the same underlying offense, distinguished only by degree factors." Sirmons v. State, 634 So.2d 153 (Fla.1994). Thus, if the jewelry described in the robbery count is the same jewelry referred to in the grand theft count, the two convictions cannot stand. Here, however, the robbery count pertained to the jewelry worn by Mrs. Leenher, while the grand theft count involved other stolen items. Where the property which is the subject of the robbery is different from the property taken in the grand theft, the double jeopardy analysis is less well defined and "necessarily depends upon chronological and spatial relationships." Castleberry v. State, 402 So.2d 1231 (Fla. 5th DCA 1981).
We have recently recognized that multiple convictions for robbery and carjacking may constitute separable crimes, even where the temporal separation between the two acts may be minimal. See Consiglio v. State, 743 So.2d 1221 (Fla. 4th DCA 1999). In Consiglio, the defendant beat the victim, first demanded her keys, then shortly thereafter demanded money. When the robbery was complete, the defendant drove off with the victim's car. This court found that the intentions and actions in stealing the money and the car were separate; hence, convictions for robbery and carjacking did not violate double jeopardy. See id.
*1055 Similarly, in Simboli v. State, 728 So.2d 792 (Fla. 5th DCA 1999), the defendant, a taxicab passenger, demanded the driver's money and threatened to stab him, then had the driver exit the cab, whereupon the defendant drove away in the cab. The court held that two crimes, robbery and carjacking, were committed. Id. See also Howard v. State, 723 So.2d 863 (Fla. 1st DCA 1998).
As in Consiglio, Simboli, and Howard, we deem Blevins' intent and actions in committing the robbery and grand theft to be sufficiently separate to constitute separate criminal offenses.
Blevins also argues that his conviction for burglary with intent to commit a battery bars his conviction for aggravated battery.
It is undisputed that, applying the necessarily included lesser offense exception of section 775.021(4)(b)3, Florida Statutes, a defendant cannot be convicted of burglary with an assault or battery and also be convicted of either simple battery, see Torna v. State, 742 So.2d 366 (Fla. 3d DCA 1999), or simple assault, see Febles v. State, 654 So.2d 615 (Fla. 3d DCA 1995); Bronson v. State, 654 So.2d 584 (Fla. 2d DCA 1995). Courts are divided, however, on whether a conviction for aggravated battery may be sustained along with a conviction for burglary with an assault or battery. Compare Billiot v. State, 711 So.2d 1277 (Fla. 1st DCA 1998) and Washington v. State, 752 So.2d 16 (Fla. 2d DCA 2000)(en banc), with Crawford v. State, 662 So.2d 1016 (Fla. 5th DCA 1995).
In Crawford, the Fifth District held that it was improper to convict for first-degree burglary and aggravated battery where the facts of the aggravated battery formed the basis for enhancing the burglary charge. See id. at 1017. In Billiot, the First District affirmed the defendant's convictions for first-degree burglary and aggravated battery, finding that the two crimes do not require identical elements of proof and are not degrees of the same offense, nor is one a lesser-included offense to or subsumed by the other. See id. at 1279. Accord Washington. Both courts reasoned that the elements of aggravated battery, as distinguished from simple battery, remove the crime from the exceptions to subsection (4)(b). See Washington; Billiot, where conflict with Crawford was noted. See also Gaber v. State, 684 So.2d 189 (Fla.1996)(upheld dual convictions for armed burglary and grand theft of a firearm even where the stolen firearm formed the basis for enhancing the burglary); Cf. Mingo v. State, 680 So.2d 1079 (Fla. 3d DCA 1996)(upheld dual conviction for burglary with assault or battery and attempted second-degree murder).
In Green v. State, 728 So.2d 779 (Fla. 4th DCA 1999), this court followed Billiot and held that dual convictions for burglary with a battery and battery on a law enforcement officer were not violative of double jeopardy protections, because the battery on a law enforcement officer includes an added element. We agree with the First and Second District conclusions in Billiot and Washington on these facts as well, and certify conflict with Crawford.
As to all other issues raised, we also affirm.
WARNER, C.J. and HAZOURI, J., concur.